IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.                              CIVIL ACTION NO.  3:12-7925

SAMIH FADL JAMMAL,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Samih Fadl Jammal's motion "denying" Plaintiff's complaint (ECF No. 11), which the Court interprets as a motion to dismiss. For the reasons stated below, the motion is **DENIED**.

## I.      Statement of Facts

This dispute concerns Defendant's naturalization as a United States citizen. According to Plaintiff United States' complaint, Defendant was born in Lebanon in 1969, and was a Lebanese citizen until his naturalization.[1] He legally entered the United States in January 1992 as a student, married a United States citizen in March of that year, and adjusted his status to lawful permanent resident in October of that year. On July 6, 1995, Defendant filed an application for naturalization, known as a Form N-400. On this form, Question 15(a) asked if the applicant ever "knowingly committed any crime for which [he had] not been arrested," to which Defendant answered "no." Defendant was interviewed under oath regarding his naturalization application

---

[1] The facts concerning Defendant's immigration history are taken from Plaintiff's complaint, ECF No. 1, and Defendant does not correct this immigration history.

on January 31, 1996, and again stated that his answer to Question 15(a) was "no." That same day, his application was approved and he took the oath of citizenship.

The United States filed the pending complaint on November 19, 2012, alleging that between August 1994 and March 1995, Defendant acted as follows:

> [Defendant] engaged in a nationwide criminal scheme to repackage and sell misbranded infant formula, a scheme he concealed during the naturalization process and which would otherwise have disqualified him from becoming a United States citizen. Specifically, during the five-year period prior to his naturalization, Jammal conspired with others and introduced and delivered misbranded and repackaged cases of infant formula worth approximately $1.5 million into interstate commerce. Among other things, Jammal and his co-conspirators introduced into the commerce stream cases of infant formula on which the expiration date did not represent the true expiration date for all the infant formula within that case.

Compl. ¶ 1, ECF No. 1. As part of this scheme, Defendant allegedly purchased infant formula and repackaged the formula into cases provided by Lexington Wholesale Company ("Lexington"), rather than using the manufacturer-provided packaging cases. *Id.* ¶¶ 15-17. Plaintiff alleged that Defendant knew this repackaging was illegal. *Id.* ¶ 18. Furthermore, "[t]he expiration dates listed on the outside of the cases of infant formula did not necessarily represent the actual expiration date of each can of infant formula contained in the cases," and Defendant allegedly knew this fact. *Id.* ¶¶ 20, 22. Additionally, according to Plaintiff, "[s]ome of the cases of repackaged infant formula contained a 'use by' or expiration date that post-dated the actual expiration date of the infant formula packaged in those cases." *Id.* ¶ 21. Plaintiff attached an Affidavit of Good Cause from Immigration and Customs Enforcement ("ICE") Special Agent David Palmer to support the complaint.

In the complaint, Plaintiff also stated that a grand jury indicted Defendant on April 2, 1998, and Defendant subsequently pled guilty to aiding and abetting the introduction or delivery for introduction into interstate commerce of adulterated or misbranded food, specifically infant

formula, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 331(a), 333(a)(1).[2] Defendant was

sentenced to 3 years' probation and fined $2,000. He does not dispute this conviction.

Plaintiff claimed that because this criminal scheme occurred before Defendant's

naturalization process began, Defendant was prohibited from being naturalized. Also, because he

knew of the crime, he had lied on the naturalization form and during the sworn interview.

Specifically, Plaintiff brought the following four counts against Defendant in the complaint:

Count I:    Jammal illegally procured his United States citizenship because he
            committed unlawful acts during the statutory period.
Count II:   Jammal illegally procured his United States citizenship because he
            committed a crime involving moral turpitude during the statutory
            period.
Count III:  Jammal illegally procured his United States citizenship because he
            gave false testimony for the purpose of obtaining an immigration
            benefit during the statutory period.
Count IV:   Jammal procured his United States citizenship by willful
            misrepresentation and by concealing his involvement in a nationwide
            fraud conspiracy.

In regards to relief, Plaintiff requested that: the Court revoke Defendant's naturalization and

cancel his Certificate of Naturalization; Defendant be restrained from claiming any rights,

privileges, or advantages based on citizenship; and Defendant surrender his Certificate of

Naturalization, any other indicia of United States citizenship, and any copies thereof.

Defendant thereafter filed a motion for an enlargement of time in which to obtain a

lawyer and collect documentation, and alternatively requesting dismissal of the complaint. ECF

No. 6. Defendant attached his own affidavit, which denied the complaint's allegations. Aff. of

Samih Fadl Jammal ¶ 2, ECF No. 6-1 (hereinafter "Def.'s Aff."). According to this affidavit,

Lexington said it had permission to print the new packaging cases. *Id.* ¶ 5. He also emphasized

---

[2] Under 18 U.S.C. § 2, aiders and abettors of crimes are punished as principals. 21 U.S.C. §
331(a) prohibits "[t]he introduction or delivery for introduction into interstate commerce of any
food . . . that is adulterated or misbranded." The maximum punishment for violation of § 331(a)
is one year's imprisonment and/or a $1,000 fine. 21 U.S.C. § 333(a)(1).

that the expiration dates on the repackaged cases were, if anything, earlier than the actual expiration dates, and therefore no cans were post-dated. *Id.* ¶ 7.

The complaint mentioned that federal agents searched a truck loaded with formula belonging to Defendant, Compl. ¶ 31, but Defendant clarified that he "submitted the truck load" of repackaged formula to federal authorities upon learning "that the federal government [was] interested in that repackage[d] [b]oxes load." Def.'s Aff. ¶ 11(b). He explained that the authorities "released the repackaged boxes truck load," and allowed Defendant to continue to use repackaged cases as long as the cases were stamped to state that the formula had been repackaged. *Id.* ¶ 11(c), (d).

Defendant asserted that he was not aware that any sort of wrongdoing or crime had happened until he was indicted, at which time Defendant ceased doing business with Lexington. *Id.* ¶¶ 12-13. Therefore, he claimed, when he completed the naturalization form and interview, he did not know he had committed a crime for which he had not been arrested, and engaged in no willful misrepresentation to immigration officials.

This Court granted in part the motion for enlargement of time, allowing Defendant until March 14, 2013 to file an answer to the complaint. ECF No. 7. Two days before his answer was due, Defendant filed a second motion for enlargement of time, and alternatively to dismiss the complaint. ECF No. 8. He again denied the allegations in the complaint, stated that the complaint lacked "proof or evidence," and asked for additional time to hire an immigration attorney and collect documentation. He attached to this motion the same affidavit attached to the first motion. Plaintiff then filed a response, opposing the requested three-month extension, and instead suggesting a 30-day extension. ECF No. 10. Plaintiff also stated that it did not construe Defendant's motion as a motion to dismiss.

4

Defendant thereafter filed the pending motion "denying" Plaintiff's complaint, in which he again denied the allegations in the complaint and stated that the complaint lacked "proof or evidence." ECF No. 11. He also claimed that Special Agent Palmer lacked firsthand involvement with the events comprising Defendant's immigration history and conviction. Defendant represented that he "will be presenting evidence to prove to the court that the defendant did not know and was not aware of any wrong doing" at the time of his naturalization. *Id.* ¶ 3. He repeated that at the time of naturalization, he did not know that his conduct concerning the formula constituted a crime, and that therefore the complaint should be dismissed. The Court thereafter denied Defendant's second motion to enlarge time, and directed Plaintiff to respond to Defendant's motion to deny the complaint. ECF No. 12.

Plaintiff timely filed a response opposing Defendant's motion to deny the complaint, stating that Plaintiff construed the motion as a motion to dismiss. ECF No. 13. Plaintiff claimed that its allegations for all four claims satisfied the pleading standard under the Federal Rules of Procedure, and therefore should survive the motion to dismiss. Defendant has not filed a reply, and the time to do so has expired.[3] Therefore, Defendant's motion is ripe for resolution.

## II.       Standard of Review

Defendant's motion to "deny" the complaint challenges the underlying factual basis for the lawsuit and claims that Defendant lacked knowledge of wrongdoing at the time of naturalization. He does not appear to challenge the venue, personal jurisdiction, or subject-matter jurisdiction. Therefore this Court, like Plaintiff, interprets Defendant's motion to "deny" the complaint as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] This Court's most recent order reminded Defendant that he is expected to comply with applicable federal and local rules of procedure. ECF No. 12.

A complaint must meet the pleading standard of Rule 8 in order to survive a motion to dismiss. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to

dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Special considerations arise when a case involves pro se pleadings, as is the case here with Defendant's pleadings. A court must construe pro se filings liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In construing pro se filings liberally, however, the court must be careful not to "rewrite a petition to include claims that were never presented." *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998). Also, the court need not "conjure up questions never squarely presented to" it. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.    Discussion

The statutory authority of this Court to hear this case seeking revocation of Defendant's naturalization is as follows:

It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .

8 U.S.C. § 1451(a).

### A. Sufficiency of Affidavit

This statute requires that Plaintiff include an "affidavit showing good cause." To this end, Plaintiff attached to its complaint the affidavit of Special Agent Palmer. Defendant attacks the basis for the affidavit, in that Mr. Palmer did not have personal involvement in Defendant's immigration case and criminal charges, but rather reviewed Department of Homeland Security records concerning Defendant. Contrary to Defendant's argument, it is well-settled that the affidavit of good cause can be sufficient when based solely on an INS employee's review of records, and that the affiant need not have personal knowledge of or involvement with the immigration case at issue. *Nowak v. United States*, 356 U.S. 660, 662 (1958) (where "affiant was an attorney of the Immigration and Naturalization Service who swore that the allegations made in his affidavit were based upon facts disclosed by official records of the Naturalization Service to which he had had access," affidavit was sufficient even though attorney lacked personal knowledge of the case); *Maisenberg v. United States*, 356 U.S. 670, 672 (1958) (finding affidavit sufficient where it "was not signed by an individual having personal knowledge of the facts on which the proceedings were based, but by an attorney of the Immigration and Naturalization Service who relied on official records of the Service."); *United States v. De Lucia*, 256 F.2d 487, 488 (7th Cir. 1958); *United States v. Bimba*, 233 F. Supp. 966, 970 (E.D.N.Y. 1964); *United*

*States v. Chandler*, 142 F. Supp. 557, 559 (D. Md. 1956). Therefore, the Court finds that Plaintiff's affidavit of good cause satisfies the statutory prerequisite.

### B.  Grounds for Revocation

Under the statute, there are two grounds for revoking naturalization: a) the "order [admitting such person to citizenship] and certificate of naturalization were illegally procured," or b) the order and certificate "were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Counts I, II, and III seek revocation under the first ground, and Count IV seeks revocation under the second ground. The Court will address the Counts in numerical order.

Count I alleges that Defendant illegally procured his citizenship by committing unlawful acts during the statutory period. In order to be naturalized, an individual must be "a person of good moral character" "during the five years immediately preceding the date of filing his application." 8 U.S.C. § 1427.[4] If an individual was naturalized but was not a person of good moral character during the statutory period, then the naturalization was illegally procured, in violation of § 1451(a). Furthermore, if an applicant "[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts," then he does not have good moral character for immigration purposes, unless "extenuating circumstances" are shown. 8 C.F.R. § 316.10(b)(3)(iii). Plaintiff represents, and Defendant does not dispute, that Defendant pled guilty to an unlawful act that occurred during the statutory period, namely violation of 21 U.S.C. § 331(a). Also, the scheme as alleged reflects negatively on Defendant's moral character. Therefore, the allegations in Count I are sufficient to survive this motion to dismiss.

---

[4] This five-year period is known as the "statutory period."

Count II alleges that Defendant illegally procured citizenship by committing a crime involving moral turpitude during the statutory period. Any "alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of" "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime" cannot be admitted to the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I). Crimes involving fraudulent and/or dishonest activity commonly fall into the category of "crimes involving moral turpitude." *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010) ("The Supreme Court long ago explained in the immigration context that '[w]hatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.'" (quoting *Jordan v. De George,* 341 U.S. 223, 232 (1951))).

Plaintiff here alleges that "Jammal's criminal activity was fraudulent and misleading." Compl. ¶ 58. The alleged fraudulent nature of the activity appears clearly on the face of the complaint, as Defendant not only engaged in illegal repackaging but also allegedly knew the repackaging to be illegal. To the extent such an analysis may be necessary, the Court finds that Plaintiff's pleading of fraud satisfies Federal Rule of Civil Procedure 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Plaintiff has sufficiently described "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)). Furthermore, the Court is aware that it "should hesitate to dismiss a complaint under Rule 9(b) if the court is

satisfied (1) that the defendant has been made aware of the particular circumstances for which [he] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927, at *10 (S.D. W. Va. Mar. 31, 2008) (quoting *Harrison*, 176 F.3d at 784). The Court finds that both conditions are met here. Therefore, Count II survives the motion to dismiss.

Count III alleges that Defendant illegally procured his citizenship because he gave false testimony for the purpose of obtaining an immigration benefit during the statutory period. An individual "who has given false testimony for the purpose of obtaining any [immigration] benefits" during the statutory period is not a person of good moral character for immigration purposes, and therefore cannot be naturalized. 8 U.S.C. §§ 1101(f)(6), 1427. To fall into this prohibited category, the individual must have had the subjective intent to deceive when giving the false testimony. *See Kungys v. United States*, 485 U.S. 759, 779-80 (1988) (also noting that it is irrelevant whether the misrepresentation was material for purposes of 8 U.S.C. § 1101(f)(6)). Furthermore, Federal Rule of Civil Procedure 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." With this in mind, the Court finds that Plaintiff sufficiently alleged that Defendant knew that the formula repackaging was illegal at the time it was undertaken, and that Defendant therefore intentionally lied to immigration authorities. Defendant disputes this assertion and argues that he did not know he had committed a crime until he was indicted years after his naturalization. However, this is the sort of factual disagreement that trial is meant to resolve, and it is premature for the Court to make a determination about intent at this stage. Therefore, the Court will not dismiss Count III.

Count IV alleges that Defendant procured naturalization through willful misrepresentation and concealment of a material fact. Defendant does not argue that the alleged

misrepresentation was not "material"[5]; rather he alleges that at the time of naturalization he did not know he had committed a crime for which he had not been arrested. In a revocation proceeding under § 1451(a) based on willful misrepresentation of material facts or concealment, intent to deceive must be proven. *United States v. Tooma*, 187 F. Supp. 928, 930 (E.D. Mich. 1960) ("[T]o establish concealment of a material fact or willful misrepresentation, the Government must go beyond the mere falsity of an answer and must demonstrate knowledge of the falsity of the statement and the intent to deceive.") (citing *Knauer v. United States*, 328 U.S. 654 (1946); *United States v. Tuteur*, 215 F.2d 415 (7th Cir. 1954); *United States v. Pellegrino*, 155 F. Supp. 726 (S.D.N.Y. 1957)); *see also United States v. Okeke*, 671 F. Supp. 2d 744 (D. Md. 2009) (emphasizing that willfulness must be shown). Because Plaintiff need only generally plead intent at this stage under Rule 9(b), for purposes of a motion to dismiss, Plaintiff has sufficiently alleged that Defendant intentionally and willfully concealed material information or misrepresented a material fact. The Court emphasizes that Defendant will have an opportunity to contest later on the merits whether he in fact intended to deceive INS, and the Court is not now deciding that Plaintiff succeeded in proving intent on the merits. Therefore, the Court will not at this time dismiss Count IV.

---

[5] Although Defendant does not dispute materiality, the Court notes that Plaintiff has sufficiently alleged the materiality of the supposed misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 771-72 (1988) (finding materiality where "the misrepresentation or concealment was predictably capable of affecting, *i.e.,* had a natural tendency to affect, the official decision" as to "whether the applicant meets the requirements for citizenship," or in other words where "the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified" for naturalization).

**Conclusion**

For the reasons stated above, Defendant's motion to dismiss (ECF No. 11) is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 30, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE